No. 21-70099

# In the United States Court of Appeals for the Ninth Circuit

KENNETH MOSER, dba Marketing Support Systems

*Petitioner-Appellant*,

v.

FEDERAL COMMUNICATIONS COMMISSION; and THE UNITED STATES OF AMERICA

*Respondent-Appellees*,

**On Petition for review of an Order from the Federal Communications Commission File No. EB-TCD-18-00028267**

**EN BANC HEARING request of Petitioner Kenneth Moser**

KENNETH MOSER
*Petitioner in Pro Per*

i

# **PETITIONER REQUESTS AN *EN BANC* HEARING**

I make this request because the Panel's decision conflicts with the 2023 decision of the United States Supreme Court in *Axon Enterprise v. Federal Trade Commission*, No. 21-86 (U.S. Apr. 14, 2023) and consideration by the full court is necessary to secure and maintain uniformity of the Court's decisions and this proceeding involves one or more questions of exceptional importance.

## **Background of the Case**

I am Petitioner Ken Moser, dba Marketing Support Systems, and I request an *en banc* hearing to review my Petition for Review of an Order of the Federal Communications Commission (FCC File # EB-TCD-1800028267). Hereinafter, "the Appeal." This request incorporates all the facts and arguments set forth in my Opening Brief of October 7, 2021, and my Reply Brief of April 19, 2022, in this matter (#21-70099).

This Appeal was dismissed by the three-judge Panel of Wallace, D. Nelson, and Fernandez on March 16, 2023.

The Panel believed that the Ninth Circuit Court of Appeals does not have jurisdiction to hear this type of appeal of an FCC Order. They ruled, without oral argument, that only a District Court could hear this type of appeal.

Under Federal Rule of Appellate Procedure 35, an *en banc* hearing can be ordered if: (1) *en banc* consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance.

**An *En Banc* Hearing Should be Granted to Avoid a Conflict With a Recent Decision of the U.S. Supreme Court**

The Panel's decision conflicts with the 2023 decision of the United States Supreme Court in *Axon Enterprise v. Federal Trade Commission*, No. 21-86 (U.S. Apr. 14, 2023) because it did not consider the factors required by *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200. Therefore, consideration by the full court is necessary to secure and maintain uniformity of the Court's decisions. Furthermore, as discussed below, this proceeding involves one or more questions of exceptional importance. Before we discuss the Supreme court's recent *Axon* decision, we should review two preliminary questions.

**The First Question: Do I have the option to ask this Court of Appeals to review this Order or must it be first sent to the District Court?**

The traditional answer is "Yes." In the Communications Act, Congress enacted a comprehensive statutory and regulatory regime to govern how the Courts

3

review orders of the Federal Communications Commission ("FCC"). Congress vested the Courts of Appeal with jurisdiction over judicial review of such orders. *Folden v. U.S.* 379 F.3d 1344, 1355 (Fed. Cir. 2004).

This type of judicial review has long been permitted under the Hobbs Act. At § 47 U.S.C. § 402 (a) which states:

> *"Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of title 28."*

Chapter 158 of 28 U.S.C. § 2342 (1) states:

> *"The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47."*

Congress intended the general rule to be "FCC Orders get reviewed by a Circuit Court of Appeals." However, Congress also created an exception to the rule when it vested the District Courts with jurisdiction over "enforcement" of such Orders. See *Folden* at 1355 and 47 U.S.C. § 401.

### The Second Question: What is the "true nature" of this request?

4

The Appellate Courts in the FCC cases of *Folden* at 1359, fn13 and *Sandwich Isle Communication v. US. 992 F. 3d 1355 (Fed Cir. 2021)* asked the question: what is the "true nature" of the claims in question. If the Panel had also asked this question, it would have determined that the "true nature" of my request is the type that should receive circuit court review under § 402(a). My request is for a full "judicial review" of the FCC's flawed Order. It is a "stretch" to think that the "true nature" of this matter is the Attorney General's active attempt to "enforce" an Order to collect a monetary fine.

There is no dispute that if the FCC can persuade the Attorney General to enforce this flawed Order against me, a nearly bankrupt *in pro per* petitioner, that enforcement case could start in the District Court per § 401. But we are more than five years after my alleged violation, and more than 3 years and 7 months after the FCC issued its *Notice of Apparent Liability,* and more than two years and 7 months after it issued its Order. That's a long time without a District Court action to collect this "debt."

The "true nature" of a thing is what it is now, not what it hypothetically might be someday. The Government's disinterest in collection argues against this being an "enforcement matter" that should bar me from seeking Circuit Court Review.

5

Furthermore, this is a challenge to an Order that arose from a public complaint. That's the "true nature" of this matter. Phil Graham, a political opponent of my client's aunt, initiated this matter by filing a <u>complaint</u> to the California Secretary of State and that <u>complaint</u> was forwarded to the FCC.

The FCC's Press Release of December 12, 2019, states:

*"The calls (about Phil Graham) took place about one week prior to the primary election for the California State Assembly. The California Secretary of State referred a <u>complaint</u> about the matter to the FCC's Enforcement Division Bureau."*

This is significant because the Communications Act allows a common carrier subject to an Order that concludes a <u>complaint-initiated investigation</u> to appeal that Order in the Court of Appeals. *ATT Corp v FCC*, 323 F.3d 1081 (DC Cir. 2003) and 47 USC § 208 which reads in pertinent part:

*"Any person, any body politic, or municipal organization, or State commission, <u>complaining</u> of anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof, may apply to [FCC] by petition which shall briefly state the facts, whereupon a statement of the <u>complaint</u> thus made shall be forwarded by the [FCC] to such common carrier, who shall be called upon to satisfy the <u>complaint</u> or to answer the same in writing within a reasonable time to be specified by the [FCC]."*

*"The [FCC] shall, with respect to any investigation under this section of the lawfulness of a charge, classification, regulation, or practice, issue an order concluding such investigation within 5 months after the date on which the <u>complaint</u> was filed."*

6

<u>*"Any order concluding (this) investigation shall be a final order and may be appealed under section 402(a) of this title."*</u>

Furthermore, because this complaint was about my activity during a political campaign, this Order chills my fundamental right to Free Speech. The "true nature" of this Order is an attempt to chill my Free Speech, and the Free Speech of my clients. This subject is more fully discussed in the "exceptional importance" section below.

When you look at the "true nature" of this Order arising from a complaint; or its "true nature" as a First Amendment case; or the "true nature" of the AG's disinterest in pursuing this "un-collectible" debt; you will conclude this is not an "enforcement" matter. It's really a "request for judicial review" of an Order.

**The Third Question: Is the Panel's decision in conflict with *Axon*?**

The Panel's decision was issued on March 16, 2023, without allowing oral argument. Then 29 days later, the U.S. Supreme Court issued its decision in *Axon*. I ask this Court to hear my request, *en banc*, to allow the Court to consider how the U.S. Supreme Court resolved a similar dispute in *Axon* over the proper forum for an appeal of a federal commission's order.

In *Axon*, the Supreme Court was asked to decide whether a challenge to a federal agency's decision must follow the traditional path (a final agency decision followed by a circuit court appeal) or could the Petitioner expedite the challenge by

skipping the agency process and file the challenges (many constitutional) directly in a district court.

The Supreme Court in *Axon* looked to the Thunder Basin factors to make this determination. The Court acknowledged that in some cases the factors pointed to the traditional path and in other cases the factors pointed to the expedited path.

The Supreme Court in *Axon* said the following:

> *"A special statutory review scheme, this Court has recognized, may preclude district courts from exercising jurisdiction over challenges to federal agency action. See, e.g., Thunder Basin, 510 U. S., at 207. District courts may ordinarily hear those challenges by way of 28 U. S. C. §1331's grant of jurisdiction for claims 'arising under' federal law.*
>
> *Congress, though, may substitute for that district court authority an alternative scheme of review. Congress of course may do so explicitly, providing in so many words that district court jurisdiction will yield. But Congress also may do so implicitly, by specifying a different method to resolve claims about agency action.*
>
> *The method Congress typically chooses is the one used in both the Exchange Act and the FTC Act: review in a court of appeals following the agency's own review process.*
>
> *We have several times held that the creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction over the covered cases. See Thunder Basin, 510 U. S., at 207–212; Elgin v. Department of Treasury, 567 U. S. 1, 10–15 (2012); see also Free Enterprise Fund v. Public Company Accounting Oversight Bd., 561 U. S. 477, 489 (2010) (noting that statutory schemes for agency review 'generally' are 'exclusive'). The agency effectively fills in for the district court, with the court of appeals providing judicial review.*

> *But a statutory review scheme of that kind does not necessarily extend to every claim concerning agency action. Our decision in* <u>Thunder Basin</u> *made that point clear. After finding that Congress's creation of a "comprehensive review process" like the ones here ousted district courts of jurisdiction, the Court asked another question: whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure." 510 U. S 208, 212.*
>
> *The Court identified three considerations designed to aid in that inquiry, commonly known now as the Thunder Basin factors.*
>
> *First, could precluding district court jurisdiction "foreclose all meaningful judicial review" of the claim? Next, is the claim "wholly collateral" to the statute's review provisions? And last, is the claim "outside the agency's expertise?"*
>
> *The ultimate question is how best to understand what Congress has done— whether the statutory review scheme, though exclusive where it applies, reaches the claim in question.*
>
> *The first* <u>Thunder Basin</u> *factor recognizes that Congress rarely allows claims about agency action to escape effective judicial review. The second and third reflect in related ways the point of special review provisions—to give the agency a heightened role in the matters it customarily handles and can apply distinctive knowledge to.* <u>Axon</u> *at 598 U. S. \_\_\_\_ (2023)*

The Panel in my case did not apply the *Thunder Basin* factors to determine whether my challenge to the FCC's action is "of the type Congress intended to be reviewed within the statutory structure."

For example, if the Panel had applied the first and third *Thunder Basin* factors, it would have asked if the FCC review of my matter was "outside the agency's expertise" and if this "foreclosed all meaningful judicial review."

If the Panel had asked these questions, it might have reached the same conclusion that the Supreme Court reached in *Thunder Basin* or in *Elgin*, that the federal agency (in this case the FCC) had sufficient expertise in the subject area to provide "meaningful review" of the Petitioner's claims.

### An *En Banc* Hearing Should be Granted Because this Case Involves One or More Questions of Exceptional Importance.

This request is of "exceptional importance" because the Panel's decision conflicts with the authoritative decisions of other United States Courts of Appeals.

**(1) As stated above,** the Panel did not examine the "true nature" of the complaint as did the Federal Circuit in *Folden* or *Sandwich Isles Communications*. The Panel also did not apply the proper standard for orders that arose from "complaint-initiated investigations" as did the D.C. Circuit in *ATT Corp v FCC*.

**(2) Regarding the Citation** - The FCC's decision to issue a citation, then exempt itself from the statutory requirements of that citation, is "arbitrary and capricious' and conflicts with the decisions of the 5th Circuit Court of Appeals.

The FCC issued a *Citation and Order* (the "*Citation*") on December 13, 2019, which directed me to stop this alleged bad conduct or I could be liable for significant fines. I did not continue to engage in this conduct, yet I was assessed significant fines. Why? Because the FCC unilaterally exempted itself from a federal statute <u>and that is a matter of "exceptional importance."</u>

The Panel's decision to ignore the FCC's behavior conflicts with the authoritative decisions of other United States Courts of Appeals. Let me briefly explain.

The *Citation* states the following:

> *"We direct Moser to take immediate steps to comply with the Communications Act of 1934, as amended, including the Telephone Consumer Protection Act, and the Federal Communications Commission's rules, which prohibit (1) making artificial or prerecorded voice message calls without identifying the caller at the beginning of the message and providing the contact number of the caller during or after the message, and (2) making artificial or prerecorded voice message calls to wireless phones unless the calls are made for emergency purposes or with the prior express consent of the called party. <u>If Moser fails to comply with these requirements, Moser may be liable for significant fines.</u>"*

11

The FCC was required to issue the *Citation* under 47 U.S.C. § 503 (b) (5) which reads:

> *"No forfeiture liability shall be determined under this subsection against any person, (like me who does not hold or seek a license, permit, certificate, or other authorization issued by the Commission) unless, prior to the (required notice of apparent liability) such person (A) <u>is sent a citation of the violation charged</u>; (B) is given a reasonable opportunity for a personal interview with an official of the Commission, at the field office of the Commission which is nearest to such person's place of residence; and (C) <u>subsequently engages in conduct of the type described in such citation.</u>"*

I did not engage in any of this "bad conduct" after I was given the *Citation*. There is nothing in the *Forfeiture Order* indicating I engaged in any bad conduct after I received the *Citation*. So why did I still get fined? Why did the FCC ignore the plain text of its own *Citation*?

The FCC admits it's hypocrisy in Paragraph 43 of the *Forfeiture Order* when they wrote "the Commission has already determined that it is not obligated to first issue a non-monetary warning in the form of a citation" under its *Truth in Caller ID Order* of 2011 which reads at paragraph 47:

> *"The Truth in Caller ID Act makes no reference to section 503(b)(5) of the Communications Act, which states that the Commission may not assess a forfeiture under any provision of section 503(b) against any person (like me) unless the Commission first issues a citation to such person in accordance with certain procedures… that omission suggests that Congress intended to give the Commission the authority to proceed expeditiously to stop and,*

*where appropriate, assess a forfeiture penalty against, any person or entity engaged in prohibited caller ID spoofing without first issuing a citation."*

The FCC justified this interpretation because it received "no comments disagreeing with the Commission's proposed approach."

On its surface, this is absurd. The FCC believes the "new law didn't mention the old law's protections for the individual, so they are deleted." The better interpretation, which is consistent with hundreds of years of statutory construction, is "if Congress wanted to delete the old law's protections, they would have specifically deleted them!"

The FCC unilaterally exempted itself from a federal statute. The Panel ignored this overreach of regulatory power. The Panel's "blind eye' conflicts with the authoritative decisions of other United States Courts of Appeals.

For example, consider the words of the 5th Circuit in *Ek Hong Djie v. Garland* 39 F.4th 280, 285 (5th Cir. 2022):

*"Now consider the regulation. Put simply, it ignores the statute's text and creates its own exception. When a regulation attempts to override statutory text, the regulation loses every time—regulations can't punch holes in the rules Congress has laid down. So we hold the regulation is invalid."*

Please also consider the words of the 5th Circuit in the FCC case of *Huawei Techs. v. FCC*, 2 F.4th 421, 435 (5th Cir. 2021)

> *"As a threshold matter, the FCC claims we must defer to the agency's construction of* [the statute] *unless the statute explicitly withholds authority to adopt the* [new regulation]. *But our circuit has repeatedly rejected this "nothing-equals-something"argument. We do not jump to Chevron step two any time a statute does not expressly negate the existence of a claimed administrative power. Only legislative intent to delegate such authority ... entitles an agency to advance its own statutory construction for review under Chevron's deferential second prong."*

Consider the words of the U.S. Supreme Court in *Ragsdale v. Wolverine World Wide* 535 U.S. 81, 85 (2002):

> *"Our deference to [a Federal Agency's statutory interpretation] has important limits: A regulation cannot stand if it is "arbitrary, capricious, or manifestly contrary to the statute."*

When the FCC issued a citation to put me on notice, then later told me they were not required to give me that notice, that is "arbitrary and capricious." When the FCC told me they would not penalize me unless I continued bad conduct, and I did not do, or continue to do, that bad conduct, but they penalized me anyway, that is "arbitrary and capricious."

**(3) Regarding the First Amendment** - This request is also of "exceptional importance" because it involves First Amendment issues. The FCC's *Order*, which

14

presumably includes the *Citation's* threats, continues to chill my Free Speech. The Citation reads:

> *"IT IS ORDERED that, pursuant to Sections 4(i) and 4 (j) of the Act, Kenneth Moser doing business as Marketing Support systems must cease and desist from making autodialed, artificial or prerecorded voice message calls in violation of section 227 of the Act and section 64.12000 of the Rules".*

In my Opening Brief, I argue why this Order is flawed because any "autodialed, artificial or prerecorded voice message calls" at issue were made for my client while she was exercising her First Amendment right to speak out in opposition to political candidate Phil Graham.

It was Graham via his attorneys who complained to the California Secretary of State about the content of the message and asked the Secretary to "…interrupt the [phone] call program…" during his political campaign. The Secretary of State, knowing it had no such authority, simply forwarded their complaint to the FCC.

However the California Secretary of State, via its sub-agency, the California Fair Political Practices Commission, did investigate Graham's allegation that the calls violated state "political disclaimer requirements." Ultimately after an investigation of my client, her aunt and uncle, ruled that these calls did not violate

15

any state disclosure laws. See

https://www.fppc.ca.gov/content/dam/fppc/documents/enf_letter/2022/6-10-22/Mark-Muir-201800336.pdf

Congress, in its wisdom, when it enacted the Telephone Consumer Protection Act in 1991, carved out an exception for non-commercial or political speech; "calls that are not made for a commercial purpose." So that this law would not infringe upon our free speech rights in political campaigns. (47 U.S.C. § 227 (b)(2)(B)(i))

However, the FCC ignored this protection for non-commercial political speech because (in the words of FCC Commissioner Jessica Rosenworcel);

> *"You're tired of them. Me too. The calls that tumble in every day, offering a cruise or debt relief or something else you did not ask for, do not want, and do not need - they are exasperating. Robocalls are degrading communications and destroying trust in networks. We need to respond in kind. With more action, more enforcement, and more penalties - like what we do here today."*

Commissioner Rosenworcel cites her dislike of commercial calls to justify the infringement of my Free Speech right to make exempt non-commercial political calls. This is an arbitrary and capricious disrespect for the First Amendment.

16

The FCC is threatening future fines, for me, based on this *Citation* and this *Order*. This threat chills my Free Speech right to help my political clients who agree with my political views. It also chills the Free Speech rights of my clients who want to use my services. It also appears, in the words of Commissioner Rosenworcel, that the FCC is using this *Order* to deter others from making similar political calls in the future. Since the FCC can consider an earlier Order to assess future penalties, this flawed *Order* will haunt me until I am given a full and fair judicial review.

I am not the first appellant to describe the chilling impact these orders have on free speech rights. See for example *Action for Children's Television v. FCC* 59 F. 3d 1249, 1255. (D.C. Circuit 1995).

I ask for this *en banc* review to expedite this process because we have a long tradition in American justice of expediting review when our Free Speech rights are threatened by government action. It's hard to imagine anything that is of more "exceptional importance" than protecting Free Speech.

### Request for an En Banc Hearing.

For the reasons set forth above, I ask for an *En Banc* Hearing in this matter.

17

## CONCLUSION

For the foregoing reasons, the Court should find that it has jurisdiction over this petition because of the constitutional challenges raised, and it should also find that the Forfeiture Order of the FCC should be reversed and rescinded because of the constitutional violations and arbitrary conclusions that the FCC reached in calculating their $9,997,750.00 fine.

Date: June 15, 2023

>   */s/ Kenneth Moser*
>   Kenneth Moser
>   *Petitioner in Pro Per*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(f) because, notwithstanding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 3,938 words and complies with the word limit of Cir. R. 32-1.

2.  This brief complies with the typeface and type size requirements of Fed. R. App. P.32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: June 15, 2023.

                                                    */s/ Kenneth Moser*
                                                    Kenneth Moser

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, I electronically filed the foregoing **EN BANC HEARING request of Petitioner Kenneth Moser** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Kenneth Moser*
Kenneth Moser